UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JENNIFER VICKERS,                    :        Case No. 1:09-cv-397
                                     :
        Plaintiff,                   :        Judge Herman J. Weber
                                     :        Magistrate Judge Timothy S. Black
vs.                                  :
                                     :
COMMISSIONER OF                      :
SOCIAL SECURITY,                     :
                                     :
        Defendant.                   :


**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-
DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL
EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**


        This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore

unentitled to supplemental security income ("SSI") and disability income benefits ("DIB").

(*See* Administrative Transcript ("Tr.") (Tr. 11-20) (ALJ's decision)).

## I.

        On June 12, 2006, Plaintiff filed an application for supplemental security income

("SSI") and disability insurance benefits ("DIB"), alleging a disability onset date of May

1, 2006, due to low back pain, borderline intellectual functioning, depressive disorder,

anxiety disorder, and personality disorder.  (Tr. 11, 127, 132).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendation.

Upon denial of her claims on the state agency levels, Plaintiff requested a hearing *de novo* before an ALJ. (Tr. 65-70, 73-86, 88). A hearing was held on March 17, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 34-55). A vocational expert ("VE"), Donald Woolwine, was also present and testified. (Tr. 11). At the end of the hearing, the ALJ requested that Plaintiff undergo additional psychological and physical examinations. (Tr. 54). The hearing reopened on September 4, 2008, at which Plaintiff appeared with counsel and testified, along with a VE. (Tr. 21-28).

On October 23, 2008, the ALJ entered his decision finding Plaintiff not disabled. (Tr. 20). That decision became the final determination upon denial of review by the Appeals Council. (Tr. 30).

Plaintiff was 42 years old at the time of the ALJ's October 2008 decision. (Tr. 20, 127). She stopped going to school in the seventh grade because she had a baby. (Tr. 39). She attempted to get a GED, but did not pass. (Tr. 40). Plaintiff had past relevant work as a bakery worker (light semi-skilled) and a machine operator (light, unskilled) (Tr. 18).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since May 1, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: low back pain, borderline intellectual functioning, depressive disorder (NOS), anxiety disorder (NOS), and personality disorder (NOS) (20 CFR 404.1520(c) and 416.920(c)). An additional impairment which includes alcohol abuse/dependence has been considered and found to be less than severe.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand two hours total in a workday, two hours at a time; walk one hour total in a workday, one hour at a time; sit five hours total in a workday, four hours at a time; only occasionally climb; frequently balance, stoop, kneel, crouch or crawl; frequently handle, finger, feel reach and push/pull with the upper extremities; occasionally tolerate exposure to moving mechanical parts; never tolerate exposure to unprotected heights; and she can tolerate moderate exposure to noise levels (Exhibit 20F). Secondary to her mental impairments, she has a mild (slight limitation) ability to understand/carryout/remember complex instructions and make judgments on complex work-related decisions; mild to moderate (more than a slight limitation, but still able to function satisfactorily) ability to interact appropriately with the public/supervisor(s)/co-workers and respond appropriately to usual work situations and to changes in a routine work setting; and she is capable of performing simple repetitive-type tasks (Exhibit 22F).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 2, 1966 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-20).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI or DIB. (Tr. 20).

On appeal, Plaintiff argues that: (1) the ALJ improperly dismissed the findings of the treating source; (2) the ALJ failed to properly evaluate this case under listing 12.05; (3) the ALJ failed to properly consider the combined impact of Plaintiff's impairments; and (4) the ALJ did not adequately consider Plaintiff's pain and credibility. Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this

review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

For her first assignment of error, Plaintiff claims that the ALJ improperly dismissed the findings of the treating doctor.

The record reflects that:

### *Physical Health Evidence*

Plaintiff has a history of back-pain complaints for which she underwent physical

therapy in June 2004. (Tr. 198-206). In July 2004, her physical therapist discharged her for missing and cancelling several appointments. (Tr. 198).

In March 2005, Plaintiff was involved in an automobile accident, which caused a strain to her neck and middle back. (Tr. 208). X-rays showed "mild degenerative changes" in Plaintiff's middle back, and neck x-rays were normal. (Tr. 210). Magnetic resonance imaging ("MRI") from April 2005 of Plaintiff's low back was normal. (Tr. 207). Daniel Ray, M.D., prescribed Darvocet (pain reliever). (Tr. 208). In March and April 2006, Stephen Pomeranz, M.D., assessed mild degenerative changes in Plaintiff's mid and low back, and noted that a computerized tomography ("CT") scan of Plaintiff's neck was unremarkable. (Tr. 332, 334-35). He recommended an MRI if Plaintiff experienced continued neck pain. (Tr. 332).

Plaintiff alleges that she became disabled on May 1, 2006. (Tr. 127). Around that time, she was undergoing physical therapy on her lower back, but a May 10, 2006 physical therapy note indicated that Plaintiff was discharged after two visits because she had not rescheduled or returned for further additional therapy. (Tr. 211).

In June 2006, Dr. Pomeranz examined Plaintiff for complaints of chest pain and concluded that she had a moderate-grade stenosis, but an otherwise normal heart. (Tr. 325). In July 2006, Plaintiff underwent a left heart catheter with left ventriculogram and coronary arteriogram. (Tr. 219). Richard Ansinelli, M.D., concluded that test results showed no significant coronary disease. (Tr. 219, 243).

In August 2006, Peter Tsai, M.D., opined that Plaintiff had "multiple medical conditions that may interfere with her ability to work," noting coronary artery disease, atherosclerosis, arthritis in her spine, and sciatica. (Tr. 318). He opined that Plaintiff could not perform "any activities that have repetitive motions, sitting, walking, and standing for greater than 30 minutes at a time, and lifting or carrying any objects greater than 5 lbs." (*Id.*)

The record contains no further treatment notes concerning Plaintiff's physical impairments until April 2008, when David Provaznik, D.O., examined Plaintiff on behalf of the state agency and found that she had normal muscle strength, range of motion, and reflexes, and her straight leg raising test was negative. (Tr. 434-37, 445). Dr. Provaznik noted that Plaintiff had a "slightly diminished" ability to sense vibration, but her gait was "unremarkable without ambulatory aid," and she was able to flex and move around "without difficulty." (Tr. 445). He diagnosed Plaintiff with early spondylosis of the low back. (*Id.*) Based on his examination, Dr. Provaznik opined that Plaintiff could lift and carry up to twenty pounds frequently and greater than twenty pounds occasionally. (Tr. 438). He also opined that Plaintiff could stand two hours total in a workday (and two hours at a time); walk one hour total in a workday (one hour at a time); sit five hours total in a workday (four hours at a time); occasionally climb; frequently balance, stoop, kneel, crouch, and crawl; frequently reach, handle, finger, feel, and push/pull with her hands; continuously operate foot controls; occasionally tolerate exposure to moving mechanical

parts; never tolerate exposure to unprotected heights; and she could tolerate moderate exposure to noise levels. (Tr. 439-42).

### *Mental Health Evidence*

On August 2, 2006, Plaintiff complained of increasing anxiety attacks. (Tr. 320). On August 25, 2006, James Rosenthal, Psy.D., examined Plaintiff on behalf of the state agency. (Tr. 247-50). Plaintiff told Dr. Rosenthal that she had quit school in the seventh grade because she had a baby. (Tr. 247). While in school, she reported taking regular classes. (*Id*.) She reported receiving counseling with a psychiatrist for the past five months, but said it had recently ended when her counselor died. (Tr. 248). She also said she was taking antidepressant medication from 2001 to 2003, and in the four prior months, which she said was helpful. (*Id.*) She reported that she was "not really clinically depressed," and could "laugh and carry on with people." (*Id*.) At the examination, Dr. Rosenthal observed no particular signs of anxiety, depression, or mania, and estimated Plaintiff's intelligence to be in the borderline range. (Tr. 249). He diagnosed Plaintiff with an anxiety disorder, not otherwise specified, and assigned her a global assessment of functioning ("GAF") score of 65, which indicated "some mild symptoms."[2] (Tr. 250). Based on his clinical testing, Dr. Rosenthal opined that Plaintiff's ability to tolerate the

---

[2]  The GAF score reflects a "clinician's judgment" of the individual's symptom severity or level of functioning. American Psychiatric Association, Diagnositc & Statistical Manual of Mental Disorders, 32-33 (4th ed. Text Rev. 2000) (DSM-IV-TR). The higher the number, the higher the level of functioning. *Id*. A GAF score of 61-70 reflects "some mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *Id*.

stress of day-to-day employment was mildly impaired, but she was not limited in her ability to understand, remember, and follow simple one or two step job instructions; to relate to bosses, coworkers, and the general public; or to sustain attention and concentration to complete daily work tasks. (*Id*.)

In September 2006, after breaking up with her boyfriend, Plaintiff was seen in the emergency room for suicidal ideation and abusing alcohol. (Tr. 266). She reported that she recently stopped taking her medication due to sexual side-effects, and recently increased her alcohol consumption to lessen anxiety attacks. (Tr. 274).

Also in September 2006, Mel Zwissler, Ph.D., a state agency psychological consultant, found that Plaintiff had mild limits in her ability to maintain concentration, persistence, or pace, but was otherwise not limited in her mental functioning. (Tr. 288). He also noted that Plaintiff's allegations did not seem credible because she "expressed limitations significantly different from the limitations set out in the [clinical] examiner's report." (Tr. 300). In December 2006, John Waddell, Ph.D., reviewed Dr. Zwissler's assessment. (Tr. 303). Dr. Waddell opined that Plaintiff's suicidal ideation in September 2006 was caused by situational stressors expected to resolve within twelve months, and he affirmed Dr. Zwissler's assessment as written. (*Id*.)

In November and December 2006, Plaintiff received treatment at Advanced Family Medical Center for anxiety attacks. (Tr. 308-311). In January 2007, a mental health specialist diagnosed Plaintiff with major depressive disorder and alcohol abuse, and assessed her with a GAF score of 73, which indicated "no more than slight impairment"

(Tr. 356).  DSM-IV-TR at 34.

In May 2007, Plaintiff was seen in the emergency room for suicidal ideation.  (Tr. 367-68).  Upon discharge, Plaintiff was "doing well," and she denied any depression or suicidal thoughts.  (Tr. 368).  She was not having mood swings and had no side effects from her medications.  (*Id.*)  Corazon Chua, M.D., diagnosed Plaintiff with bipolar disorder and panic disorder without agoraphobia, and assessed her GAF score to be 55, which indicated "moderate symptoms."  (*Id.*)

In March 2008, a mental health assessment[3] indicated that Plaintiff had a poor ability to relate to co-workers; deal with the public; interact with supervisors; maintain attention and concentration; understand, remember, and carry out complex or detailed job instructions; relate predictably in social situations; and demonstrate reliability.  (Tr. 429-31).  The assessor also indicated that Plaintiff had no ability to deal with work stress.  (Tr. 431).  The assessor found that Plaintiff's "history" and diagnoses of "ADHD, anxiety, stress" supported his or her assessment.  (Tr. 429-31).

In May 2008, Richard Sexton, Ph.D., examined Plaintiff on behalf of the state agency.  (Tr. 447).  Plaintiff reported seeing a psychiatrist on a monthly basis and taking medications including Nexium, Lyrica, Methylin, Diazepam, Alprazolam, Metoprolol, Oxycodone, Oxybutynin, Trazodone, Cymbalta, Proair, Lamictal, Ability, and Gabapentin.  (Tr. 448).  She said she could not return to work because of "physical and

---

[3]    The ALJ and the Court Transcript Index refer to the source of this assessment as "unknown," as no clear signature or printed name appears on it.  (Tr. 18).  Plaintiff, however, believes that the assessment was conducted by Dr. Tsai.  (Doc. 8 at 6).

emotional problems – [she] can't be around a lot of people," and she "can't stand for very long." (Tr. 448-49). She reported having "panic attacks" on a daily basis with symptoms of crying, a racing heart, shortness of breath, and feeling like she was going to have a heart attack, but denied any current suicidal ideation. (Tr. 449). Plaintiff reported she was able to do some cooking, cleaning, laundry, and grocery shopping, but her typical day consisted of eating, watching television, and sleeping. (Tr. 450).

Based on his clinical interview and psychological testing, Dr. Sexton diagnosed Plaintiff with mood disorder, anxiety disorder, borderline intellectual functioning, and personality disorder, with a GAF of 55 to 59, which indicates "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." (Tr. 452). Dr. Sexton opined that Plaintiff was able to perform simple repetitive-type tasks, and understand, recall, and carry out simple instructions, with mild limitations in her ability to understand, remember, and carry out complex instructions, and make judgments on complex work-related decisions, and mild to moderate limitations in her ability to interact with other people (including coworkers and supervisors) and tolerate daily stress and the pressures of a work environment. (Tr. 453-55).

### Statements from Plaintiff

Plaintiff testified that she alleged May 1, 2006 as her disability onset date because she started not wanting to be around people at that time. (Tr. 40-41). She could not return to work because of her emotions, her depression, and her low back pain. (Tr. 42-43). She stated she used to wear a brace to keep herself upright but it was uncomfortable,

so she stopped wearing it. (Tr. 43). She currently took four Percocets daily for pain, which were prescribed by Dr. Tsai, who she had been seeing for approximately three years. (*Id*.) She had not undergone any recent diagnostic testing. (Tr. 43-44). Plaintiff said standing and sitting caused her pain to worsen. (Tr. 44). She utilized heating pads and took pain medication including Neurontin three times a day, which reduced her pain. (*Id*.) She was told that her leg pain was due to her back condition. (Tr. 45). Plaintiff also took Trazadone to sleep better, but it rarely helped. (Tr. 49).

Plaintiff testified that she had not drank alcohol since January 2007. (Tr. 46). She stated that she did not complete the seventh grade and did not pass the general educational development ("GED") test. (Tr. 39-40). She went to monthly counseling to treat her depression and suicidal thoughts, but did not receive any medication from her counselor. (Tr. 45). Her counselor suggested that she get out more to help her depression. (Tr. 46-47). Plaintiff also testified that she had panic attacks, but was unsure of their cause. (Tr. 48). Plaintiff lived with her sister in an apartment and testified there were times when she was unmotivated to take a shower. (Tr. 47). She spent most of her days sitting in her room and "d[id]n't even watch TV." (*Id*.) She took turns making dinner and washing dishes with her sister. (*Id*.) She testified that her sister was disabled too and they took care of one another. (*Id*.) She did not belong to any group or social organizations, and did not go shopping. (Tr. 47-49). She estimated that she could stand ten minutes, could sit one-half hour, and could not lift a gallon of milk. (Tr. 50-51). Plaintiff testified that she had a driver's license in the past with no restrictions, but had

not had a license for the last seven years. (Tr. 39). She said her sister took her places or she walked. (*Id.*)

Plaintiff argues that the ALJ improperly dismissed Dr. Tsai's opinions. (Doc. 8 at 8-9, 10-11). However, the ultimate RFC finding is the ALJ's decision. *See* 20 C.F.R. § 404.1527(e)(2); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight only if it is supported by medical findings and is consistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d). An ALJ may decline to afford treating physicians even substantial weight, as long as he minimally articulates his reasons. 20 C.F.R. § 404.1527(d).

In this case, the ALJ reasonably concluded that Dr. Tsai's August 2006 opinion was "not supported by the medical evidence of records or treatment notes" (Tr. 18). In fact, Dr. Tsai's opinion was merely a "To Whom It May Concern" letter, and it contained no supporting clinical or diagnostic tests. Rather, Dr. Tsai merely listed Plaintiff's previous diagnoses of coronary artery disease, atherosclerosis, arthritis in her back, and sciatica. (Tr. 318). The March 2008 mental health assessment also deserved little weight for similar reasons. Dr. Tsai merely cited to Plaintiff's "history" and noted her past diagnoses of "ADHD, anxiety, and stress." (Tr. 429- 431). Dr. Tsai's treatment notes offer little more to support his opinions. Because Dr. Tsai's opinions were not supported by substantial evidence, the ALJ had a reasonable basis for not giving them significant

weight.  *Id*. § 404.1527(d)(2-3).

The absence of reliable support for Dr. Tsai's opinions was, by itself, an independent and reasonable basis given by the ALJ to support his weighing of Dr. Tsai's opinions.  Additionally, the ALJ explained that these opinions were inconsistent with other substantial evidence in the case record.  (Tr. 18).  For instance, diagnostic images of Plaintiff's neck and back were either normal or showed only mild changes.  (Tr. 207, 210, 332, 334-35).  In June 2006, Dr. Pomeranz concluded that Plaintiff had a moderate-grade stenosis, but July 2006 heart testing showed no significant coronary disease.  (Tr. 219, 243, 325).  Dr. Provaznik found in April 2008 that Plaintiff had normal muscle strength, range of motion, and reflexes, and her straight leg raising test was negative.  (Tr. 434-37, 445).  He did notice a "slightly diminished" ability to sense vibration, but her gait was "unremarkable without ambulatory aid," and she was able to flex and move around "without difficulty."  (Tr. 445).  Because Dr. Tsai's opinion was unsupported and conflicted with Dr. Provaznik's well supported opinion, the ALJ reasonably rejected Dr. Tsai's opinion.  *Id*. § 404.1527(d)(2, 4); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992)) (ALJs are "not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

Regarding Dr. Tsai's March 2008 mental assessment, the ALJ reasonably concluded that it was "highly inconsistent with the weight of the evidence, including treatment records and the two agency psychological consultative evaluations."  (Tr. 18).

As discussed above, the medical opinion evidence indicated that Plaintiff had only mild to moderate mental limitations, as evidenced by her GAF scores between 55 and 73. (Tr. 250, 356, 368). Dr. Rosenthal opined that Plaintiff was able to understand, remember, and follow simple one or two step job instructions; to relate to bosses, coworkers, and the general public; and to sustain attention and concentration to complete daily work tasks. (Tr. 249-50).

In the most recent mental examination, Dr. Sexton opined that Plaintiff was able to perform simple repetitive-type tasks, and understand, recall, and carry out simple instructions, with mild limitations in her ability to understand, remember, and carry out complex instructions, and make judgments on complex work-related decisions, and mild to moderate limitations in her ability to interact with other people (including coworkers and supervisors) and tolerate daily stress and the pressures of a work environment. (Tr. 453-55). Drs. Zwissler and Waddell found no greater limitations than those posed by Dr. Sexton. (Tr. 288, 303). Because Dr. Tsai's March 2008 mental assessment was unsupported and conflicted with other substantial evidence, the ALJ had a reasonable basis for not giving Dr. Tsai's opinion significant weight.

Accordingly, the ALJ reasonably considered all the relevant evidence in the record and based his residual functional capacity finding on the opinions of Drs. Provaznik and Sexton. (Tr. 16).

**B.**

For her second assignment of error, Plaintiff maintains that the ALJ failed to properly evaluate this case under Listing 12.05.

Disability based on mental retardation requires, initially, evidence that the claimant suffers from "significantly sub-average general intellectual functioning" and from "deficits in adaptive functioning" that were initially manifested during the developmental period, (*i.e.*, before age 22). Listing 12.05. The condition reaches listing level severity where, *inter alia*, the record also reflects a valid I.Q. score between 60 and 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function. Listing 12.05C; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ found that plaintiff did not met Listing 12.05C. The ALJ based this conclusion not on the fact that there has been no formal diagnosis of mental retardation, but on the fact that the evidence of record does not establish the condition as defined by the Listing. Specifically, there is no evidence that plaintiff suffered from deficits in adaptive functioning prior to age 22, as required by the Listing. Plaintiff obtained a driver's license, was able to work in a bakery, and as a machine operator. Moreover, Plaintiff claimed that she has been unable to work, not because of her low cognitive functioning, but because of her depression. Additionally, she testified at the administrative hearing that she quit school in the seventh grade because she had a baby, not because of her intellectual functioning. Significant to whether or not a claimant meets

the diagnostic description in Listing 12.05C is whether there is a diagnosis of mental retardation. There is no medical evidence that Plaintiff was found to be mentally retarded. A diagnosis of borderline intellectual functioning is not consistent with a diagnosis of mental retardation. *See e.g.*, *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 452 (6th Cir. 2007) ("It is undisputed that no psychologist has diagnosed Cooper with mental retardation. The examiner and clinical psychologist who tested him diagnosed him instead as borderline intellectual functioning."); *West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007) ("Dr. Dunn's evaluation revealed only borderline intellectual functioning and adjustment disorder, not mental retardation."); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126 (6th Cir. 2003) ("The conclusions of Dr. Spence that Kamea was operating in the borderline range of intelligent functioning, rather than being mentally retarded, are supported by the testimony . . . although her intelligence test scores, standing alone, would indicate mental retardation.").

Accordingly, Plaintiff failed to demonstrate that she satisfies the diagnostic description in Listing 12.05C's introductory paragraph. Since Plaintiff has failed to make this showing, she has not met her burden, and the ALJ's decision is therefore supported by substantial evidence.

## C.

For her third assignment of error, Plaintiff maintains that the ALJ failed to properly consider the combined impact of Plaintiff's impairments.

In the ALJ's decision, he made the following Step Two finding under 20 C.F.R.

§ 404.1520(c):

> The claimant has the following severe impairments: low back pain, borderline intellectual functioning, depressive disorder (NOS), anxiety disorder (NOS), and personality disorder (NOS) (20 CFR 404.1520(c) and 416.920(c)). An additional impairment which includes alcohol abuse/dependence has been considered and found to be less than severe.

(Tr. 13).

Plaintiff argues that the ALJ did not properly consider the combined impact of her impairments. (Doc. 8 at 10). However, an ALJ meets his obligation to consider a claimant's impairments in combination when he refers to them in combination. *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990); *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987) (ALJ considered claimant's impairments in combination where the ALJ referred to a "combination of impairments" in finding that the claimant did not meet the requirements of a listed impairment and when the ALJ referred to the claimant's "impairments" in the plural).

In this case, the ALJ found that Plaintiff had "severe impairments." (Tr. 13). He also referred to Plaintiff's impairments as a "combination of impairments." (Tr. 14). Additionally, Plaintiff fails to point out how the ALJ's residual functional capacity finding was negatively affected by this alleged error. Therefore, the ALJ properly considered the combined impact of Plaintiff's impairments.

## D.

For her fourth assignment of error, Plaintiff claims that the ALJ failed to adequately consider Plaintiff's pain and credibility.

The ALJ's assessment of credibility is entitled to great weight and deference, since she had the opportunity to observe the witness's demeanor. *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 852 (6th Cir. 1986) (any credibility determinations concerning subjective complaints of pain are the exclusive domain of the hearings officer).

> The assessment of a claimant's assertions of disabling pain is made in light of factors set forth in 20 C.F.R. § 404.1529, summarized in a two-part test:
> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine:
> (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Infantado v. Astrue,* 263 Fed. Appx. 469, 475 (6th Cir. 2008) (quoting *Felisky,* 35 F.3d at 1038-39).

In his decision, the ALJ weighed the credibility of Plaintiff's allegations and reasonably determined that they were not credible to the extent they were inconsistent with his residual functional capacity finding. (Tr. 17). In determining a claimant's credibility, an ALJ must consider objective medical evidence, but also must consider

subjective factors such as daily activities, the claimant's reports of the nature of the symptoms, the type and effectiveness of medications taken to relieve symptoms, treatment other than medication, and evidence from treating physicians concerning functional limitations. 20 C.F.R. § 404.1529(c)(3-4); *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). An ALJ will also consider whether the record contains any inconsistencies and whether the claimant's testimony conflicts with the rest of the evidence. *Id*. § 404.1529(c)(4).

In this case, the objective medical evidence and the medical opinion evidence discussed above conflicted with Plaintiff's allegations. Additional inconsistencies noted by the ALJ included Plaintiff's differing reports regarding her highest grade completed, but more importantly, that she initially reported attending regular classes (Tr. 159, 247), and later reported attending special education/learning disability classes (Tr. 350, 448). Plaintiff also told the ALJ that she spent most of her days in her room, not even watching television. (Tr. 47). But she told Dr. Sexton two months later that she was able to do some cooking, cleaning, laundry, and grocery shopping, and her typical day consisted of eating, watching television, and sleeping. (Tr. 450). She even told Dr. Rosenthal in August 2006 that she was "not really clinically depressed," and could "laugh and carry on with people." (Tr. 248).

Lastly, Plaintiff's conservative treatment significantly conflicted with her

allegations of disabling symptoms and pain.[4] She was never referred to pain management

or a specialist for her back, and she "never had surgery or injections and . . . has not

received any current physical therapy or chiropractic treatment." (Tr. 18). Even when

prescribed physical therapy in the past, Plaintiff was noncompliant with treatment. (Tr.

18, 198, 211). Because Plaintiff's allegations were inconsistent with the objective

medical evidence and other substantial evidence in the record, the ALJ had a reasonable

basis for discounting her credibility.

## III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The

ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to disability

insurance benefits and supplemental security income, be found **SUPPORTED BY**

**SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain

pending for the Court's review, this case be **CLOSED.**


Date:  April 12, 2010                             s/ Timothy S. Black

                                                  Timothy S. Black
                                                  United States Magistrate Judge

---

[4]    "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting SSR 96-7p, 1996 SSR LEXIS 4, at *4 (July 2, 1996)).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JENNIFER VICKERS,             :          Case No. 1:09-cv-397

          :

        Plaintiff,           :          Judge Herman J. Weber

          :          Magistrate Judge Timothy S. Black

vs.                    :

          :

COMMISSIONER OF       :

SOCIAL SECURITY,       :

          :

        Defendant.      :

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to the proposed findings and recommendations within **FOURTEEN DAYS**

after being served with this Report and Recommendations.  Such objections shall specify

the portions of the Report objected to and shall be accompanied by a memorandum of law

in support of the objections.  A party may respond to another party's objections within

**FOURTEEN DAYS** after being served with a copy thereof.  Failure to make objections

in accordance with this procedure may forfeit rights on appeal.  *See United States v.*

*Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).